## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH TAGGART | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-4261 |
| | : | |
| NEW CENTURY FINANCIAL | : | |
| SERVICES, INC., et al. | : | |

## MEMORANDUM

**McHUGH, J.**                                                                                    **March 18, 2022**

Pro-se plaintiff, Kenneth Taggart, a serial litigant, alleges wrongful conduct by Defendants, arising out of a 2014 state court action filed against Taggart to collect debt allegedly owed on a Citibank account.  Mr. Taggart maintains that the parties reached a settlement which he seeks to enforce.  Defendants contest the existence of a settlement and move for summary judgment.  For the reasons set forth below, Plaintiff's motion will be denied, and Defendants' motion granted.

### I.    Factual and Procedural History

The background facts are as follows.

Defendant New Century Financial Services, Inc. ("NCF") filed a lawsuit against Plaintiff Taggart on July 2, 2014, in the Court of Common Pleas of Bucks County, Pennsylvania, Civil Division, with a case number of 2014-04566 (the "Collection Lawsuit") to recover an alleged past due obligation Plaintiff owed to NCF.  *See* NCF's Statement of Mat. Facts,[1] Ex B: Declaration of David B. Warshaw, Esq. ¶ 13, ECF 38-2.  The alleged past due obligation was in respect to a credit card originally issued by Citibank, and for which Taggart allegedly had an unpaid balance of

---

[1] Defendant NCF erroneously filed a Statement of Material Facts and a separate Memorandum of Law in Support of its Motion for Summary Judgment, in violation of the guidelines for counsel, but because the Statement of Material Facts cites to the record, the court has considered both documents.

$27,138.16.  *See* NCF's Statement of Mat. Facts, Ex. A, Attach. 2 at 48, ECF 38-2.[2]  NCF had placed the unpaid account with Defendant Pressler, Felt & Warshaw, LLP ("PFW") for collection, after it had been charged off by Citibank, N.A. and subsequently acquired by NCF.[3]  Warshaw Decl. ¶¶4-5.  On November 5, 2013, PFW sent Taggart notice pursuant to 15 U.S.C. § 1692g(a) regarding the debt owed.  *Id.* ¶6.  The notice included the required statement that Plaintiff could dispute the debt within 30 days of receipt of the notice.  *See* Warshaw Decl., Attach. 1, ECF 38-2. Plaintiff did not respond to the November 5, 2013, notice.  Warshaw Decl. ¶12.  He was then served with the collection lawsuit in July 2014 and filed an answer with a New Matter and Counterclaim on October 11, 2016.  *Id.* ¶¶13,15.

After nearly four years defending the Collection lawsuit and litigating his counterclaim, Plaintiff, through his then counsel Joshua Thomas, filed this lawsuit on June 29, 2020 in the Court of Common Pleas of Bucks County, Pennsylvania, Civil Division, Case No. 2020-02920. ECF 1-1.  In it, he alleged a series of violations regarding the initial collection lawsuit, including violations of the Fair Debt Collection Practices Act ("FDCPA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270, *et seq.*, and raised common law claims of defamation, tortious acts, and fraud.  *Id.*

Defendant NCF subsequently removed the case in August, 2020.  Counsel for Plaintiff requested multiple extensions of time within which to accomplish service against a law firm defendant, which the Court generously granted. While attempting to serve another law firm

---

[2] Defendant NCF's citations are difficult to follow. For ease, the Court references exhibits by letter, and refers to the exhibits attached to the lettered exhibits by number.

[3] PFW is the successor to Pressler & Pressler LLP, and, in the absence of any dispute between the parties on the issue, the Court treats them as the same entity for the purposes of this motion.

defendant, Stock & Grimes, Plaintiff failed to prosecute his case against Defendants NCF or PWF. This led NCF to file a Motion to Dismiss for failure to prosecute.  ECF 23.  As NCF's Motion to Dismiss was pending, Plaintiff sought a fourth extension of time to serve Stock & Grimes. ECF 27.  The Court then denied both NCF's Motion to Dismiss and Plaintiff's Motion for a Fourth Extension of Time, dismissing Stock & Grimes from the action.  ECF 33.  Following this, the Court issued a factual discovery deadline of October 1, 2021, and a dispositive motions deadline of December 1, 2021.  Although NCF served Plaintiff with discovery on June 23, 2021, and PWF served Plaintiff with discovery on August 13, 2021, Plaintiff did not serve discovery on either PWF or NCF until September 1, 2021, just 30 days before expiration of the discovery deadline. At that same time, Plaintiff's counsel also attempted to notice depositions without following the usual courtesy of contacting opposing counsel first.

As NCF pressed counsel for responses to its own discovery, Mr. Taggart's then-attorney Thomas responded on September 14, 2021, stating that his client had "just filed bankruptcy."  A review of the bankruptcy docket for the United States Bankruptcy Court for the Eastern District of Pennsylvania confirms that on September 9, 2021, Plaintiff filed for Chapter 11 bankruptcy protection, acting pro se.  *In re Taggart*, Case No. 21-12476 (the "Bankruptcy Case").

Meanwhile, as this action was pending, Mr. Thomas was attempting to negotiate a settlement with Defendants, without revealing that he was the subject of disciplinary action by the Pennsylvania Supreme Court due to a litany of complaints.  The records of the Disciplinary Board reflect that on August 11, 2021, a Joint Petition in Support of Discipline on Consent Pursuant to Pa. R. D. E. 215(d) was submitted by Attorney Thomas and Pennsylvania disciplinary counsel. The Supreme Court of Pennsylvania entered a Final Order on October 1, 2021, suspending Attorney Thomas from the practice of law.  Mr. Taggert then announced that he was representing

himself pro-se and filed a motion for extraordinary relief, contending that a settlement had been reached, or in the alternative seeking an extension of scheduling deadlines, ECF 37, I denied relief for the reasons outlined in my prior memorandum, ECF 42.

In 2021, Defendant NCF filed a motion for summary judgment, ECF 38, joined by Defendant PWF, ECF 39, which Plaintiff has opposed.   Mr. Taggart also moved for reconsideration of my order denying extraordinary relief, partially on the grounds that Defendants had failed to comply with the settlement agreement which he contends was reached on September 30, 2021.  ECF 46.  I partially granted Plaintiff's Motion for Reconsideration, to hear testimony as to the existence and enforceability of a settlement and argument as to all other pending motions.

## II.      Legal Standard

This motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.      Discussion

 Because a reasonable juror could not find in Mr. Taggart's favor, Defendants' motion for summary judgment must be granted in full.

### A.      Plaintiff and Defendants have not reached an enforceable settlement agreement

Plaintiff contends that he reached a settlement with Defendants, which he moves to enforce. In a previous memorandum opinion issued on December 13, 2021, ECF 41, I concluded based upon the parties' submissions that any settlement was void, relying on the controlling legal standard set forth in *Nocito v. Lanuitti*, 167 A.2d 262 (Pa. 1961).  I have granted partial reconsideration of that order for the purpose of giving Mr. Taggart the opportunity to create a factual record in support of his position.  Having now heard testimony both from Mr. Taggart and

4

from a representative of NCF, Jeffrey Esposito, I conclude both that Taggart has failed to prove the existence of a settlement, and even assuming a settlement had been reached,  the Defendants have shown that it is void because of material omissions by Taggart's counsel, Joshua Thomas Esq., and Taggart's later misrepresentations to the Eastern District Bankruptcy Court.

As to the existence of a settlement, the settlement agreement was not signed by PFW, just NCF.  Having reviewed the document, ECF 48, it was clearly designed as a joint settlement that required the agreement of all parties, for the sum of $5000, and in the absence of the assent of the law firm defendant, it cannot be said that that there was an agreement. Mr. Taggart could only testify to "an agreement in principle," at some point, and stated that there were "minor clarifications" on which the parties had yet to agree. Significantly, he did not participate in any of the discussions with counsel for PFW, and as such lacks a firsthand knowledge as to whether final agreement was ever reached. Indeed, in his testimony, he appeared to concede that at best, there may have been a final settlement only with NCF.  When testifying, Mr. Taggart was combative and argumentative, undermining his credibility.  Thus, on the threshold issue of whether an agreement was reached, I find against Mr. Taggart.

But even if an agreement existed, Defendants are entitled to a declaration that it is void.  In my earlier opinion, I set forth the fact that plaintiff's attorney Joshua Thomas had already agreed to the imposition of a two-year suspension from the practice of law before attempting to finalize a settlement with the Defendants here.  Mr. Esposito credibly testified that his company sought to pay nuisance value and save on litigation costs because of previous bad experiences with both Mr. Thomas and Mr. Taggart in which they relentlessly pursued claims of dubious merit.  It was therefore highly material that New Century was unaware of the impending suspension on negotiating with Mr. Thomas.  In my previous memorandum, I concluded that Mr. Taggart was

bound by the conduct of his attorney, a result that was especially appropriate given the long-standing relationship between them. Mr. Taggart's testimony at the evidentiary hearing only reinforced that conclusion when he conceded that he was aware of impending disciplinary action against Mr. Thomas but paid it no heed.

Aside from Thomas' failure to disclose, Taggart's own conduct in Bankruptcy Court provides a separate basis for voiding the agreement. Defendants became aware of the bankruptcy filing in mid-September. Consequently, the proposed settlement agreement specifically provided that the settlement would have had to have been approved by the Bankruptcy Court, and were approval denied, the Agreement would become "null and void." Mr. Esposito credibly testified that he reviewed Mr. Taggart's later submissions to the Bankruptcy Court and became concerned about the viability of the settlement in two material respects. First, in listing the current litigation as a potential asset, when asked to supply a value, Taggart answered "unknown," ECF 19, when in fact the proposed settlement was for the sum of $5000. Esposito was concerned that this could constitute a fraud on the Bankruptcy Court and a fraud on the creditors. Second, Mr. Esposito testified that counterclaims remained pending in the underlying state court action giving rise to this case. The proposed settlement was contemplated as a global resolution of all claims, ECF 48, p. 2, ¶1. Esposito was therefore concerned that Taggart's failure to disclose those counterclaims as an asset would have resulted in its a lack of legal capacity on his part to extinguish those claims, in which case NCF would not have received the benefit for which it had bargained. I found Mr. Taggart's explanations for those failures to be evasive and not worthy of belief, and further find that his lack of candor with the Bankruptcy Court provides clear and convincing evidence that the agreement he seeks to enforce here is void.

For these reasons, I find that Mr. Taggart has not made a sufficient showing to overturn my previous ruling and again conclude that Defendants and Plaintiff did not reach an enforceable settlement agreement.

### B. Because there is no enforceable settlement agreement, and there is no genuine dispute of material facts as to Mr. Taggart's claims, summary judgment is granted for Defendants

Plaintiff brings claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-1, *et seq.*, the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270, *et seq.*, and he brings common law claims of defamation, tortious acts, and fraud fail.  As Defendant NCF notes, Plaintiff's lawsuit focuses on the prosecution of the Collection Lawsuit but relies on the same facts he alleges in the Counterclaim to that suit, including the lack of verification of the debt in the Collection Lawsuit, Compl. Background Mat. Facts, ¶¶17, 20-25, 28, ECF 1-1; false representations regarding the collectability of the debt in the Collection Lawsuit, *id.* ¶¶13- 16; failure to demonstrate an ownership interest in the debt, *id.* ¶¶2-6, 31; reliance upon hearsay to support the claims to recover the debt, *id.* ¶¶7-10; violations of a Consent Order, *id.* ¶¶18-19, 26-27; and the allegation that NCF committed fraud in the Collection Lawsuit, Sec. III: Deceptive and Fraudulent Practices, ¶¶1-7.  Because Mr. Taggart has failed to point "to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial," summary judgment must be granted for Defendants.  *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

*1. Plaintiff's FDCPA and FCEUA claims are barred by the statute of limitations.*

Taggart brings claims under the Fair Debt Collection Practices Act based on the allegation that Defendants acted dishonestly and/or made false and misleading representations in the

underlying collection action. *See* Compl. Counts One, Three, Seven.   To prevail on an FDCPA claim, a plaintiff must prove that (1) he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413 (2015) (citing *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir.2014)).

The Court need not determine whether there has been a violation under the FDCPA because Taggart has not brought his claims within the statute of limitations. An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 140 S. Ct. 355 (2019). "When a FDCPA claim is based on a defendant's allegedly improper pursuit of litigation to collect a debt, the FDCPA's one-year statute of limitations accrues at latest when the plaintiff is served with process." *Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d 618, 621 (E.D. Pa. 2017) *citing Schaffhauser v. Citibank (S.D.), N.A.*, 340 Fed. App'x 128, 130-31 (3d Cir. 2009) (per curiam) (non precedential).[4] Plaintiff was served with the Collection Lawsuit on July 10, 2014, but did not file this action until six years later, on June 29, 2020.  As such, the statute of limitations for any claimed violations of the FDCPA has run and summary judgment is granted for Defendants on counts One, Three, and Seven.

Taggart does not attempt to save his statute of limitations problem by specifically alleging a "continuing violation," thereby bringing otherwise time-barred claims within FDCPA's one-year

---

[4] A panel of the Third Circuit noted that courts are split as to whether the FDCPA's one year statute of limitations begins to run from the filing of the underlying collection action, or the date on which the purported debtor was served with the complaint, however, by either measure, Taggart's FDCPA claims, are untimely. *Schaffhauser*, 340 Fed. App'x at 130.

statue of limitations. But even if he did, there is presently no support for extending the continuing violation doctrine to the debt collection litigation context. *See Schaffhauser*, 340 Fed. App'x at 131 (declining to extend the doctrine to the debt litigation context, noting that only one circuit court has addressed whether participation in an ongoing debt collection litigation constitutes a continuing violation of the FDCPA and found that it did not, *Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir.1997)).

Count Nine, Taggart's claim under the Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.5, is also time barred. Compl. ¶¶101-109. Under this act, which prohibits a creditor from using "unfair or deceptive" debt collection practices, 73 P.S. § 2270.5(a), an action must be brought within two years from the date on which the violation occurs, 73 P.S. § 2270.5(b). Again, this claim fails because Mr. Taggart filed this lawsuit more than six years after the filing of the 2014 collection lawsuit.

### 2. *Mr. Taggart's Tort Claims are similarly barred by the statute of limitations*

Mr. Taggart also brings tort claims regarding alleged conduct during the 2014 collection lawsuit. Compl. ¶¶1, 82-91, 98-100, 110-112. In Count Six, Mr. Taggart brings a claim for defamation,[5] arguing that Defendants' written statements and publications are libel per se, and their oral statements are slander per se. In Count Eight, he brings a claim for tortious acts, and in Count Ten, he brings a claim for fraud. Under Pennsylvania law, the statute of limitations for libel is one year, 42 Pa. C.S. §5523(1), but general tortious conduct, including fraud, has a statute of

---

[5] The Complaint reads, "The Statements made by Defendants are false, as Plaintiff never actually defaulted on any debt that he owed to Defendants. Defendants knew, or should have known, that the statements that it made were false when made and that it had no factual basis for making the statements or pleadings that it did. All Defendants have failed to validate the debt it alleged owed, but continues to make defamatory claims, statements, and pleadings." Compl. ¶¶84-87. The claims for tortious acts and fraud follow a similar logic. *See* Compl. ¶¶97-100, 110-114.

limitations of two years, 42 Pa. C.S. § 5524.  Given that Mr. Taggart filed his Counterclaim on

October 11, 2016, which is the latest date by which he would have become aware of the 2014

collection lawsuit, but nonetheless waited to file this lawsuit until 2020, the statute of limitations

has run, and Defendants are entitled to summary judgment on all three of these counts.[6]

3. *Defendants are entitled to summary judgment on Plaintiff's FDCPA claim based on Plaintiff's untimely request for debt verification*

In Count Two, Taggart alleges that NCF failed to verify or validate the debt. Pursuant to 15

U.S.C. §1692g(a), a debt collector is required to validate debts that a consumer owes. Specifically,

the statute requires:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:
>
> (1) The amount of the debt;
> (2) The name of the creditor to whom the debt is owed;
> (3) A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) A statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer, and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) A statement that, upon the consumer's written request within the 30-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Mr. Taggart alleges that "New Century never sent a letter notifying him they made claims

to said debt, no[r] any letter notifying him of his right to dispute said debt." Compl. ¶25.  But PFW

(representing NCF) sent Plaintiff a notice pursuant to 15 U.S.C. § 1692g(a) on November 5, 2013,

---

[6] The Court need not reach the issue as to whether, as defendants argue, the statements made in the collection lawsuit are privileged pursuant to litigation privilege, as these claims are barred by the statute of limitations. Def. NCF's Summ. Judg. Mot. ECF 38-3 at 10-11.

which included the required statement that Plaintiff could dispute the debt, thereby requesting validation of it, within 30 days after his receipt of notice.[7]  Warshaw Decl. Attach. 1.

Mr. Taggart argues that NCF failed to respond to a letter, dated May 7, 2020, in which he, through his then attorney, asked NCF to validate the debt that NCF claims he owes.  Compl. ¶29.  But Mr. Taggart's request was untimely.  Mr. Taggart had 30 days from receipt of the November 5, 2013 letter to dispute the validity of the debt and request validation, but he waited more than six years after the notice had been sent to request validation.[8]  Warshaw Decl, Attach. 2.  As a result, Defendants are also entitled to summary judgment on this claim.

### 4.  *Plaintiff's respondeat superior claim in Count Four is not an independent cause of action*

In Count Four, Mr. Taggart brings a *respondeat superior* claim on the theory that at all material times, NCF was the employer of Stock & Grimes, LLP, and PFW, and therefore NCF is obligated to "persons harmed by employees in the course of their employment." Compl. ¶¶67-69.  This claim fails, however, because *respondeat superior* is not a separate cause of action and is only applicable where a theory of liability has been established, which has not happened here. *See Simcox v. National Rolling Mills, Inc.*, 1990 WL 74356 at *3 (E.D. Pa. June 4, 1990) (citing *Shuster v. McDonnell Corp.*, 1988 WL 38298, at *1 (E.D. Pa. Apr. 20, 1988)).

---

[7] The letter reads: "This is to notify you that your account with Citibank…has been purchased by NEW CENTURY FINANCIAL SERVICE, INC. and has been placed with the firm of Pressler and Pressler, LLP for collection." Later on, the letter reads, "This communication is from a debt collector. This is an attempt to collect a debt… Unless you notify the office within 30 days from receipt of the notice that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid." Warshaw Decl. Attach. 1.

[8] In addition, NCF notes that it did in fact provide a response to the letter sent by Mr. Taggart's attorney seeking verification, which again was not returned by the United States Postal Service, and which was not required by 15 U.S.C. §1692g(b).  Warshaw Decl. ¶18, Washaw Decl. Attach 3.

5.  *Summary judgment will be entered for Defendants on Mr. Taggart's UTPCPL claim*

In Count Five, Mr. Taggart brings claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-1, *et seq.*[9] "The enforcement provision at Section 2270.5 of the FCEUA provides '[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL].' " *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015) (quoting 73 P.S. § 2270.5). A Plaintiff bringing a UTPCPL claim must allege that violation of the act constituted an ascertainable loss as a result of defendant's conduct. *Id.* at 1288 (citations omitted); *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 811 (E.D. Pa. 2016) (citations omitted).

Taggart does not plead "ascertainable loss."  To the extent that he is alleging that he has incurred attorney's fees and costs as a result of NCF's conduct, Defendant NCF rightly points out that those expenses do not constitute an "ascertainable loss" under Pennsylvania law. *See Grimes v. Enter. Leasing Co. of Phila.*, 629 Pa. 457, 466 (Pa. 2014) (holding that attorney's fees do not constitute an "ascertainable loss" because such reasoning "would allow a plaintiff to manufacture the 'ascertainable loss' required to bring a private UTPCPL claim simply by obtaining counsel to bring a private UTPCPL claim; we presume that such an unreasonable result was not intended by the General Assembly.")  Given that Plaintiff has not alleged an "ascertainable loss," NCF is again entitled to summary judgment.

Moreover, there are no facts in the record demonstrating a material dispute as to whether, as Mr. Taggart argues, Defendants have violated UTPCL's "catch-all" provision, that prohibits a debt collector from "[e]ngaging in any [ ] fraudulent or deceptive conduct which creates a

---

[9] Although Mr. Taggart noted at the March 7, 2022, hearing that the statute of limitations claim under the UTPCPL is six years, this is irrelevant here, as Mr. Taggart's claims fail for the reasons discussed above.

likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi). To establish a cause of action under this catch-all provision, a plaintiff must prove the elements of common-law fraud. *See Tran v. Metro. Life Ins. Co.,* 408 F.3d 130, 140–41 (3d Cir. 2005) (predicting the Pennsylvania Supreme Court will find justifiable reliance is required to establish a UTPCPL claim); *Toy v. Metropo. Life Ins. Co.,* 863 A.2d 1, 10 (Pa. Super. 2004) (UTPCPL claims must establish the common law elements of fraud). In Pennsylvania, the elements of fraud are "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. 2014); *see also Vassalotti v. Wells Fargo Bank, N.A.*, 732 F.Supp.2d 503, 510 (E.D. Pa. 2010) (discussing elements of common-law fraud in the context of a UTPCPL claim).

Mr. Taggart summarily alleges that Defendants "repeatedly made false and misleading statements[,]" Compl. ¶76, but he has not pointed to evidence in the record to substantiate this claim. Indeed, Mr. Taggart's belief that the parties made false statements – without evidence to support this claim – is insufficient to raise an issue of material fact. So too, Mr. Taggart has not pled justifiable reliance, *i.e.*, that he "relied upon the statement or representation as an inducement to his action or injurious change of position." *Toy*, 863 A.2d at 11; *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (finding that the plaintiff had not stated a valid UTPCPL claim because he failed to show justifiable reliance). As the Third Circuit has clearly stated, the Pennsylvania Supreme Court has "categorically and repeatedly stated that, due to the causation requirement in the Consumer Protection Law's standing provision, 73 Pa. Cons. Stat. § 201–9.2(a) (permitting suit by private plaintiffs who suffer loss 'as a result of' the defendant's deception), a

private plaintiff pursuing a claim under the statute must prove justifiable reliance." *Id.* at 221 (citations omitted).

 As Mr. Taggart has been warned in prior cases before this Court, where Mr. Taggart fails to "allege what misrepresentation [Defendant] made, [fails to] allege sufficient intent, and [fails to] allege he justifiably relied on any misrepresentation," his UCTPCL claims fail. *Taggart v. Wells Fargo Home Mortg., Inc.*, 2010 WL 3769091, *10 (September 27, 2010). Because there is no evidence that NCF or PFW misrepresented that Taggart owed a debt, and because there is no evidence demonstrating that he justifiably relied on such a representation, Defendants are again entitled to summary judgment.

**IV.    Conclusion**

 For the reasons discussed above, Defendant NCF's Motion for Summary Judgment, ECF 38, which PFW joins, is granted in full, and Plaintiff's Motion to Approve Settlement, ECF 40, will be denied. An appropriate order follows. Mr. Taggart is cautioned that the requirements of Rule 11 of the Federal Rules of Civil Procedure apply to him as a pro se litigant the same as the Rule applies to a member of the bar.

/s/ Gerald Austin McHugh
United States District Judge